UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI GIRON,

        Plaintiff,

Case No. 2:16-cv-11803

HONORABLE STEPHEN J. MURPHY, III

v.

TYCO ELECTRONICS
CORPORATION,

        Defendant.

                        /

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]**

Plaintiff Vicki Giron alleges that her former employer, Tyco Electronics Corporation ("Tyco"), wrongly terminated her. She alleges sex or gender discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*, and wrongful discharge in violation of public policy.[1] Tyco filed a motion for summary judgment. ECF 23. The Court reviewed the briefs and found that a hearing was unnecessary. ECF 34. For the reasons stated below, the Court will now grant Tyco's motion for summary judgment.

**BACKGROUND**

Giron worked as a product manager in Defendant's Troy, Michigan office from October 2012 until her termination on January 31, 2016. ECF 1, PgID 2, 5. Giron contends that the Troy office was controlled by "a powerful group of sales managers who dubbed themselves 'The Legacies.'" ECF 28, PgID 384. At the beginning of her tenure with Tyco,

---

[1] The Elliott-Larsen Civil Rights Act refers specifically to "sex." Mich. Comp. Laws § 37.2202(a). The Court will refer, therefore, to Giron's claim as one for sex discrimination.

1

Giron reported to Elizabeth Schroeder ("Schroeder"). About one year later, Suraj Alva ("Alva") replaced Schroeder. *Id.* One reason for Alva's assumption of supervisory responsibilities was that Giron had "ongoing issues," in particular "behavioral" concerns due to "conflicts in the workplace with her internal colleagues." ECF 23-10, PgID 261. Giron "needed more direct supervision that [Schroeder] was unable to provide" because of the issues and because Giron was "difficult to work with." *Id.* Giron claims that Alva created rules applicable only to her, *see* ECF 28, PgID 396–97,[1] and sided with the Legacies in pricing disputes. Plaintiff further complains that Alva would meet with the Legacies without her and he subjected her to "chew out" sessions. *Id.* at 398.

Moreover, Giron alleges that Alva, directed her to "agree to discriminatory pricing practices, and specifically charging customers different prices of the same product." ECF 1, PgID 4. Giron thought the practice was illegal, or at least potentially illegal, and allegedly faced "hostility and threats by Alva" when she refused the directive. *Id.* In particular, she claims that Defendant's directive implicated Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Anti-Discrimination Act, 15 U.S.C. § 13(a). *Id.* at 6. Giron avers that Tyco retaliated against her for objecting to Alva's directives by terminating her employment. *Id.*

In November 2015, Giron was placed on a performance improvement plan ("PIP"). On January 22, 2016, Tyco fired Giron—effective January 31, 2016. In May 2016, Giron filed her complaint alleging an ELCRA violation and wrongful discharge in violation of public policy. On September 12, 2016, the Court dismissed without prejudice TE

---

[1] Neither party disputes that the listed concerns do not amount to adverse employment actions.

Connectivity. ECF 13. In April 2017, the Defendant filed a motion for summary judgment. ECF 23.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Moreover, the Court may not "make credibility determinations or weigh the evidence." *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir. 1994).

## DISCUSSION

I.  <u>Sex Discrimination Claim</u>

A plaintiff claiming sex discrimination in violation of the ELCRA must establish a prima facie case by a preponderance of the evidence. *Lytle v. Malady*, 458 Mich. 153,

3

172. The prima facie case of sex discrimination includes four elements: (1) membership in a protected class, (2) adverse employment action, (3) qualification for an employment position, and (4) discharge "under circumstances that give rise to an inference of unlawful discrimination." *Id.* at 172–73. An employer's differential treatment of a female employee from "similarly situated male employees [engaging in] the same or similar conduct" is one circumstance giving rise to an inference of discrimination. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *see also Wilcoxon v. Minn. Mining & Manuf. Co.*, 235 Mich. App. 347, 361 (1999). Establishment of the prima facie case creates a presumption of discrimination.

The defendant may rebut that presumption by "articulat[ing] a legitimate, nondiscriminatory reason for plaintiff's termination[.]" *Lytle*, 458 Mich. at 173 (quotation marks omitted). At the motion for summary judgment stage, the defendant "need not persuade the court that it was actually motivated by the proffered reasons;" rather, the defendant must provide a legally sufficient justification to justify judgment in its favor. *Id.* at 174.

The burden then shifts back to the plaintiff who must show "by a preponderance of admissible direct or circumstantial evidence, that . . . the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id.* The Court "may not make factual findings or weigh the credibility of the evidence presented[.]" *Id.* at 176.

A. <u>Plaintiff makes a prima facie showing of sex discrimination</u>.

Defendant concedes that Giron is a member of a protected class. ECF 23, PgID 187; ECF 33, PgID 905. The Court, therefore, will address the last three elements.

4

1. *Adverse employment action.*

Both Giron's placement on a PIP and her termination constitute adverse employment actions.[2] The parties dispute whether Giron's placement on the PIP established an adverse employment action. The Sixth Circuit routinely finds that "the institution of performance improvement plans do[es] not constitute adverse employment action[.]" *Allen v. Ohio Dep't of Job and Family Servs.*, 697 F. Supp. 2d 854, 891 (S.D. Ohio 2010) (collecting cases). To qualify as an adverse employment action, a PIP must be accompanied by a "tangible employment action that [the employee] alleges she suffered, or is in jeopardy of suffering[.]" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008).

If an employee's PIP results in her termination, the PIP may constitute an adverse employment action. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011) (finding an adverse employment action when "the PIP may have led directly to [the employee's] dismissal" from his company). The Court, therefore, will consider both Giron's PIP and termination as adverse employment actions.

   2. *Plaintiff was qualified for the position.*

The parties dispute how the Court should analyze Plaintiff's qualifications. Defendant emphasizes Giron's allegedly unsatisfactory behavior. ECF 23, PgID 187–88. Defendant's reliance upon *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723 (6th Cir. 1999) is unpersuasive. *Warfield* states that an employee must "demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's

---

[2] The parties agree, as they must, that termination qualifies as an adverse employment action.

5

satisfaction." 181 F.3d at 729. The Sixth Circuit has stated repeatedly, however, that an employer cannot conflate its reason for the adverse employment action with the employee's qualification for the position. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000). Tyco's reliance upon Giron's allegedly unsatisfactory behavior to refute her qualification for the job is inapposite.

Plaintiff's objective background indeed suggests that she was qualified for the position. Giron brought 25 years of experience to her role as a Global Product Manager at Tyco. Giron worked as a Senior Project Engineer at General Motors and as a Business Development Manager, Senior Sales Engineering Manager, and Senior Program Manager at TRW Automotive. ECF 28-3, PgID 430–31. Plaintiff has shown by a preponderance of the evidence that she was qualified for the job.

    3. *Plaintiff satisfies the fourth prong of the prima facie showing only as to her termination*.

Here, Plaintiff points to two separate ways in which Tyco allegedly treated her male counterparts more favorably. First, she contends that Tyco replaced her with a male employee. The Sixth Circuit has explained that a plaintiff may satisfy the final prong of the prima facie case by demonstrating that she "was replaced by someone outside the protected class." *Tilley v. Kalamazoo Cty. Road Comm'n*, 777 F.3d 303, 308 (6th Cir. 2015) (citing *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (analyzing the prima facie showing for cases relying upon circumstantial evidence of sex discrimination under the ELCRA)).

During his deposition, Alva indicated that Benjamin Ervin assumed some of Giron's former responsibilities. ECF 29-1, PgID 546. In particular, Ervin adopted Giron's main product line—FAKRA. *Id.* Tyco did not hire anyone else to assume Giron's other

6

responsibilities. *Id.* Alva indicated that Ervin was "a head count replacement." *Id.* at 584. Viewing the facts in the light most favorable to the Plaintiff, Giron established that she was replaced by a male.

Second, Giron alleges that similarly situated male employees with similar or worse conduct were not placed on PIPs. Generally, the plaintiff and the employee(s) with whom she "seeks to compare herself must be similar in 'all relevant aspects.'" *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016). Relevant factors include whether the plaintiff and the potential comparator(s) "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Rodriques v. Delta Airlines, Inc.*, 644 F. App'x 629, 634 (6th Cir. 2016) (quoting *Ercegovich*, 154 F.3d at 352).

Giron points to three potential comparators: Mike Aiello, Ken Mleczek, and John Hall.[3] None of Giron's potential comparators satisfy the prima facie showing. Aiello is an inappropriate comparator because he did not report to Alva, *see* ECF 30, PgID 899 (under seal), served in a supervisory capacity, *see* ECF 33-3, PgID 932 (Zachary Naughton reported to Aiello), and, in 2015, met Tyco expectations for both performance and behavior. *Id.* Giron points to an apparent 2014 annual 9-box review in which Aiello apparently receives ratings of "at" and "below" Tyco standards. ECF 30, PgID 900 (under

---

[3] Tyco avers that Matt Bailey is a comparator. Tyco overstates the similarity, however, because Bailey received "documented long-standing behavior and performance concerns[.]" ECF 23, PgID 190. Giron received only negative behavior reviews.

7

seal). The chart does not clearly indicate, however, whether Aiello was below standards for performance or behavior. Giron avers that Aiello was "Below for Results and At [Tyco] Standards for Behavior." ECF 28, PgID 402. Giron's statement belies her argument: Giron was fired for poor behavior, not results. A similarly situated employee would be one who had similarly poor *behavior*, not performance, and was not placed on a PIP. Regardless, the Tyco official who prepared the exhibit testified that the chart "was a preliminary review showing Mr. Aiello's possible placement in the box B3, however, his final 2015 rating placed him in Box B2." ECF 33-3, PgID 932. Giron failed to show that she was similarly situated to Aiello.

Giron avers that Ken Mleczek and John Hall were similarly situated male employees whom Tyco treated differently. ECF 28, PgID 402. Neither individual satisfies the standard for the fourth prong of the prima facie showing. Mleczek reported to Mike Hart and not Alva. ECF 29-4, PgID 783. Hall served in a supervisory role; as Giron testified, Hall was the head of "Infotainment Engineering." *Id.* Furthermore, the only evidence that Mleczek and Hall received low ratings is Giron's statement that Mleczek and Hall "were both very concerned they were going to be PIPed and they said they had their review and [were] told [that] despite the fact they had the bottom rating, they would not be PIPed[.]" *Id.*

Here, Giron's statement about what Mleczek and Hall said they were told during their meeting is inadmissible hearsay. The Court cannot consider the evidence presented that "they had the bottom rating" and "would not be PIPed." *See generally Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578–79 (1986) (detailing the district court and appellate court's distinction between admissible and inadmissible evidence). Moreover, even if the Court considered the inadmissible hearsay, there is no evidence

that Mleczek and Hall's allegedly poor ratings were for behavior rather than performance. Low ratings for performance, rather than for behavior, would distinguish Mleczek and Hall's conduct enough from Giron's to justify an employer's differential treatment. Neither Mleczek nor Hall is an appropriate comparator for purposes of Giron's prima facie showing.

For purposes of the PIP, Giron is unable to show that she was treated differently from similarly situated male employees. Giron, therefore, has made a prima facie showing of discrimination only for her termination.

B. <u>Defendant provided evidence of legitimate, nondiscriminatory reasons for Giron's termination</u>.

Because Giron made a prima facie showing of sex discrimination regarding her termination, the burden shifts to Tyco to provide evidence of a legitimate, nondiscriminatory reason for terminating her. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Termination based on an employee's "failure to correct ongoing performance deficiencies" and "meet reasonable expectations" during a PIP satisfy the Defendant's burden. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). An employer must either "explain what [it] has done or produce[] evidence of legitimate nondiscriminatory reasons." *Jackson*, 814 F.3d at 779 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (quotation marks omitted)).

Tyco provided evidence that it terminated Giron for long-standing, well-documented conduct concerns.[4] Defendant must raise only a genuine issue of fact at the summary

---

[4] Plaintiff's response to Tyco's motion for summary judgment lacks any challenge to whether Tyco proffered a legitimate, nondiscriminatory reason for its termination decision. *See* ECF 28.

judgment stage, and the evidence could persuade a reasonable jury that Tyco terminated Giron for continued behavioral issues. Defendant therefore discharged its burden.

C. <u>Plaintiff failed to proffer evidence sufficient to allow a reasonable jury to infer that Tyco's reason for terminating her was pretext.</u>

Plaintiff can demonstrate pretext by showing that the Defendant's justification "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Jackson*, 814 F.3d at 779 (6th Cir. 2016) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Plaintiff must present "enough evidence to . . . rebut, but not disprove" Tyco's proffered rationale. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) (quoting *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014)). Plaintiff must demonstrate by a preponderance of the evidence that one of the three *Dews* prongs is met. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

*1. Tyco's Justification Had a Basis in Fact*

Plaintiff can first attack Tyco's justification by offering that the proffered nondiscriminatory reason—Giron's alleged behavioral issues—had no basis in fact. Giron's managers—Elizabeth Schroeder and Suraj Alva—compiled well-documented concerns about her behavior; Giron independently corroborated the concerns. At the summary judgment stage, the plaintiff must present sufficient evidence that a reasonable jury could rely upon to rule in her favor. Insufficient evidence exists to challenge the factual basis of Tyco's proffered reason.

In her 2013 year-end assessment, Giron's manager Elizabeth Schroeder rated Giron's values as at Tyco standards. ECF 28-5, PgID 447. Further, Schroeder supported Giron's efforts to challenge the team, but encouraged her "to consider the way in which

she is delivering these messages . . . [and] to [e]nsure it's done in a constructive way. [Because] [f]eedback indicates that Vicki's approach is sometimes viewed as too abrupt and lacking respectfulness." *Id.* at 444. Schroeder reiterated the importance of communication in a team environment, *id.* at 446, and developing interpersonal skills so that Giron did not seem "as abrupt or short with people", *id.* at 447.

For her part, Giron also identified the "rough spots" and interpersonal challenges that required resolution. *Id.* at 442. She mentioned that she "consciously 'rocked the boat'" to challenge "paradigms" that did not serve Tyco's purpose. *Id.* at 444. Giron identified her number one development need as "Approachability"—a development need with which Schroeder agreed. *Id.* at 447.

That trend continued in 2014. During his mid-year assessment, Alva rated Giron as "below expectations" for her objective to improve communication skillsets. ECF 28-6, PgID 454. In the middle of the year, Alva noted that Giron needed "to work on interpersonal skills of bringing togetherness with her pears [sic] from other departments looking at bigger picture. [She] [h]as to understand and build sense of togetherness with sales to make it an us with sales approach." *Id*. at 456. In his year-end assessment, Alva listed Giron's total final behavior rating as "at [Tyco's] standard." *Id.* at 456. Alva indicated that Giron needed to enhance her "credibility with her peers" and avoid taking "a combative stance" in discussions with colleagues. *Id.* He commented that mid-year feedback sessions created "short-lived" improvements. *Id.*

Again, Giron identified the same behavior concerns her manager identified. During her mid-year self-evaluation, Giron admitted that her concise responses to communications were "perceived as too harsh" and that she had "a ways to go to show

11

improvement" in her communication skillsets. ECF 28-6, PgID 454. Giron noted that she and her coworkers disagreed and that she "need[ed] to change significantly how [she] respond[ed] to disagreement plus agree much more often." *Id.* She characterized herself as "taking too hard a line" with the direction of her product lines and members of Tyco "complained significantly[.]" *Id.* She recognized the need to repair relationships and that she had "focused too much on getting the job done and not how I do the job," which was the wrong approach. *Id.* Giron continued:

> I need to make significant improvements in my communication style and become much more agreeable with suggested pricing for my product and implementation of the product. I have challenged the team on its progress to the point of upsetting team members. . . . I have pushed back and refused suggested pricing on my product where it conflicts with my strategy for the market. . . . I need to be better at following my managers [sic] directions and much more agreeable with my co-workers. I cannot lose site [sic] that how I get my job done is equally if not more important than accomplishing what needs to happen for the product/market/customer.

ECF 28-6, PgID 456.

In his 2015 year-end assessment, Alva rated Giron's behavior as below Tyco's standards. ECF 28-8, PgID 465. Notably, Alva repeated that Giron needed to "work on significantly improving her interaction/behavior with peers and also with her manager." *Id.* Tyco placed Giron on a PIP to provide weekly feedback; Alva noted that "[f]ull engagement in the process an demonstration of marked and sustained improvement in [Giron's behavior] are critical to [Giron's] future at [Tyco]." *Id.*

Plaintiff points to *Yazdian* for the proposition that termination based on behavioral issues is pretextual. ECF 28, PgID 412–13. In *Yazdian*, the Sixth Circuit stated, "we cannot accept an employer's conclusory claim that an employee was insubordinate when

12

the alleged 'insubordination' consists of refusing to cease what a jury could find to be reasonable [Title VII]-protected activity." 793 F.3d at 652.

*Yazdian* is unpersuasive. First, there is no evidence that Giron engaged in "reasonable Title VII-protected activity" that prompted her negative behavioral ratings. Second, Giron independently corroborated her managers' statements regarding problematic behavior; the statements about behavior, therefore, cannot be characterized as conclusory claims.

> 2. *No evidence created a genuine issue of material fact of whether Giron's poor behavior motivated Tyco's conduct.*

Through a second method of evidence production, the plaintiff "attempts to indict the credibility of [the] employer's explanation" through circumstantial evidence that "an illegal motivation was *more* likely than that offered by the defendant." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Manzer,* 29 F.3d at 1084 (emphasis in original)).

> a. *The Callard-Knight Email*

Plaintiff first contends that an email exchange between Timothy Callard and Mary Beth Knight evinces the pretext of Tyco's reason for termination. In the email, Knight states: "[w]e had planned to exit Vicki for performance to create an open headcount for Sirisha's use." ECF 28-7, PgID 459.[5] The email shows that Giron's conduct was at issue and bolsters Tyco's proffered reason for her termination. Additionally, the email indicates an alternative, nondiscriminatory reason for Giron's termination—opening up a position

---

[5] Giron avers that the email shows that the PIP process was a sham. But Giron did not make a prima facie showing as to the PIP.

13

to supplement the "sensors business." *Id.* The email does not rebut the evidence of Tyco's proffered reason for Giron's termination.

   b. *Additional Evidence Proffered*

Plaintiff then presents "additional evidence of pretext" to rebut Tyco's rationale: (1) Giron met performance reviews; (2) Giron achieved stellar results; (3) Giron received positive feedback from others; (4) Tyco lacked credible or specific evidence of behavioral issues; (5) "Oddo's testimony" that the only behavioral issues arose from Giron's disagreements with the sales team over pricing; (6) Tyco's solicitation of complaints from the sales team; and (7) "more." ECF 28, PgID 412.

The first two arguments relate to the third method of demonstrating Tyco's pretext and are addressed further *infra* Section I.C.3.

Giron's third basis of additional evidence—positive feedback from others—does not tend to show that an illegal motivation for terminating Giron was *more* likely than the justification offered by Tyco. *See Johnson*, 319 F.3d at 866. Two Tyco employees from North Carolina testified to their positive interactions with Giron. For example, David Krajewski emailed Alva to inform him that Giron helped him acclimate to the FAKRA project and that he relied on her expertise. ECF 28, PgID 405. The email does not rebut any evidence of poor behavior, but does reinforce that Giron met performance-related expectations. Krajewski further testified, however, that he worked remotely with Giron and thought she did a good job, communicated well, and was capable, pleasant, and professional. ECF 29-6, PgID 848.

Additionally, Robert Rinaldi testified that he "generally had a good working relationship" with Giron, considered her to be competent, easy to work with, and

14

"sometimes" a good communicator. ECF 29-8, PgID 888. In light of all the other evidence, the recorded positive reviews from two co-workers do not make it more likely that Tyco relied upon impermissible reasons in terminating Giron; this is especially true in light of Giron's self-assessments.

The fifth additional evidence of pretext—Anthony Oddo's testimony—actually reinforces Tyco's proffered reason for Giron's termination. Plaintiff asserts that Oddo testified that the only behavioral issues of which he was aware "stemmed from Plaintiff not agreeing to the Sales team's attempt to dictate pricing." ECF 28, PgID 412. During his deposition, Oddo stated the he felt Giron was "persistently difficult to deal with," particularly as it related to pricing. He felt that she was unwilling "to work through to a solution" when her pricing suggestion and that of the sales team differed. ECF 29-7, PgID 866. That testimony does not tend to show that Tyco did not rely upon Giron's behavioral issues in terminating her.

The fourth and sixth bases—that Tyco lacked specific evidence of behavioral issues and that Tyco solicited complaints—fails to rebut that Giron's behavioral concerns did not actually motivate Tyco's action. In a December 2015 email, Leanne Gerelus notified Alva that Tyco "needed to gather specific examples of complaints." ECF 28-9, PgID 467. Alva responded to HR's request saying, "I will look into this and also request for feedback from teams that have had concerns." *Id.* at 468. The email exchange tends to show that Alva had received concerns about Giron and that he would request that feedback. Alva received comments from six individuals—five men and one woman. *See* ECF 23-25.[6] The

---

[6] Chris Pepoy, ECF 23-25, PgID 345, Anthony Oddo, *id.* at 346, William Cass, *id.* at 347, Jon Ice, *id.* at 348, John Toth, *id.* at 349, and a lengthy response from Cheryl Predki, *id.* at 350–358.

15

solicitation of feedback provided credible and specific evidence of Giron's behavioral issues.[7]

Finally, Giron suggests that there is more evidence of Tyco's pretext and references additional facts at ¶¶ 1–2, 5–8, 13, 16–18, 50, 52, and 73 listed in her response to the motion for summary judgment. ECF 28, PgID 412. None present relevant, admissible information not addressed by the Court.[8]

3. *No evidence that Giron's alleged behaviors were insufficient to warrant the challenged conduct.*

This method of proof "ordinarily . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Jackson*, 814 F.3d at 779–80 (internal citation omitted). *See also Johnson*, 319 F.3d at 866. In other words, did the plaintiff "adduce[] enough evidence to allow a reasonable jury to draw the inference that she was terminated because of her sex." *Jackson*, 814 F.3d at 780. Here, there is no evidence that other Tyco employees received low ratings for behavior in multiple yearly assessments, but were not terminated.

---

[7] Giron's position would create a Catch-22: either an employer has no basis for its decision for lack of specific evidence, or the employer possesses specific evidence but its solicitation of the feedback creates grounds for pretext.

[8] Paragraphs one and two go to Giron's education and qualification for the job. ECF 28, PgID 390. Paragraph 5 compiles Giron's year-end ratings for results and behaviors from 2013–15. *Id.* at 390–91. Paragraphs 6 and 7 relate to Giron's performance, not behavior. Paragraph 8 relates to Schroeder's year-end assessment, which the Court already discussed. Paragraphs 13 and 16 are inadmissible hearsay. Paragraphs 17 and 18 do not discuss Giron's behavior. Paragraph 52 is inadmissible hearsay; regardless it merely confirms that Tyco placed Giron on her PIP for behavior. The Court addresses paragraph 50 and 73 under Giron's third basis of additional evidence, i.e. positive feedback from colleagues.

Plaintiff avers that her performance-based reviews met expectations and that she achieved stellar results. ECF 28, PgID 412. Neither refutes Tyco's proffered reason that it terminated Giron for behavioral concerns. Giron would need to show that Tyco did not terminate male employees with performance and behavior ratings comparable to hers. No such evidence is on the record.

Because Giron failed to offer sufficient evidence under the three-pronged *Dews* approach to demonstrate the pretext of Tyco's proffered reason for termination, the Court will grant Tyco's motion for summary judgment on the sex discrimination claim.

II. <u>Wrongful Discharge Contrary to Public Policy Claim</u>

In Michigan, employers generally may terminate at-will employees at any time, for any reason, except on grounds that violate public policy. *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 256 (6th Cir. 2011). Courts imply a wrongful termination cause of action when the alleged reason for termination was the employee's failure or refusal to violate a law in the course of their employment. *Id.*; *see also Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695 (1982).

In *Suchodolski*, the Michigan Supreme Court described the implied cause of action as arising from "the failure or refusal to violate a law." 412 Mich. at 695. In practice, courts have treated "failure" and "refusal" synonymously to mean a complete omission of an action expected or required by an employer. For example, in *Pratt v. Brown Machine Co.*, the plaintiff "was required to prove that [his employer] 'expressly or impliedly required him to agree to" violate the law. *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1236 (6th Cir. 1988). Further, the plaintiff had to "prove that he refused to do so, and his refusal was a determinative factor in the decision to terminate his employment relationship." *Id. Pratt*

demonstrates courts' tendency to define "refusal" the same as "failure." *See also Wiskotoni v. Mich. Nat. Bank-West*, 716 F.2d 378, 393 (6th Cir. 1983) (addressing *Trombetta v. Detroit T & I R. Co.*, 81 Mich. App. 489 (1978) and describing the employee's refusal to violate the law as a "failure"); *Parent v. Mount Clemens Gen. Hosp. Inc.*, No. 235235, 2003 WL 21871745 (Mich. App. Aug. 7, 2003).

An ephemeral objection such as Giron's is insufficient to constitute a "refusal" under the *Suchodolski* standard for public policy torts. Here, Giron did not refuse to set a price she thought was illegal. During one particular exchange, Alva directed Giron to change the price on a product. Giron at first refused, Alva then "directed" her to change the price, and Giron expressed concern about the pricing practice. ECF 29-4, PgID 754. After that, however, Giron "went into [Tyco's] database, . . . wrote the quote up," and attributed the quote to Alva because she did not agree with the price. *Id.* Although Giron attributed the price to Alva to allegedly avoid legal liability for potentially illegal pricing activities, she admittedly "put [the price] on the database." *Id.* Despite Giron's objection, she did not refuse to commit an act she believed violated the law.

Even if the Court were to assume that Plaintiff failed to complete a directed act, that Michigan state antitrust law established a well-founded public policy against the type of price practice she alleges, and that Giron could pursue a public policy wrongful discharge claim, Giron failed in her showing. In *Parent v. Mount Clemens General Hospital*—a case cited by Plaintiff—the Michigan Court of Appeals stated that "it was incumbent upon" an employee pursuing a public policy wrongful discharge claim "to show that she had a reasonable basis for believing" that the expected or required action (i.e. changing the price) was illegal before refusing to perform her duties. *Parent*, 2003 WL

21871745, at *3. Absent from the record are specific facts detailing the incident: the date and time of the directive, the names of the companies allegedly subject to different prices, anything describing the nature of the sale and the products sold, the reasons Giron gave to Alva explaining her refusal, a description of Alva's threats to Giron after she refused the directive, and the time elapsed between Alva's threats and Giron's termination, to name a few.[9] Without proof of those facts, Giron fails to show that she had a reasonable basis for believing that Alva requested illegal price discrimination.

Giron did not fail or refuse to follow a directive that she believed violated the law. The undisputed facts refute a central element of Giron's public policy claim. The Court, therefore, will grant summary judgment on Giron's claim that her discharge violated public policy.

### ORDER

**WHEREFORE** it is hereby **ORDERED** that Defendants' motion for summary judgment [23] is **GRANTED**.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 28, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 28, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager

---

[9] No additional facts materialized during discovery; the same factual basis available to the Court at the motion to dismiss stage remains at the motion for summary judgment stage of the litigation.

19